(120 App. Div. 717)

### In re HERTLE et al., Commissioners of Accounts.

(Supreme Court, Appellate Division, First Department. July 15, 1907.)

**1. MUNICIPAL CORPORATIONS—OFFICERS—COMMISSIONERS OF ACCOUNTS—STATUTORY AUTHORITY.**

Greater New York Charter, Laws 1897, p. 35, c. 378, § 119, empowering the mayor to appoint two commissioners of accounts, who shall make examinations of the accounts and methods of the departments and offices of the city as the mayor may direct and as the commissioners may deem for the best interests of the city, and report to the mayor the results thereof, and authorizing them to compel the attendance of witnesses, first enacted by Laws 1873, p. 513, c. 335, § 106, and amended by Laws 1882, p. 29, c. 410, § 110, and by Laws 1884, p. 608, c. 516, empowers the commissioners to ascertain not only what the books of an office examined show, but what they ought to show, by requiring witnesses to submit to an examination, so that the actual transactions of the office and the officers and his subordinates and employés may be laid before the mayor, and authorizes them to investigate an officer holding an elective office; Greater New York Charter, Laws 1897, p. 34, c. 378, § 115, subd. 3, making it the duty of the mayor to keep himself informed of the doings of the various departments of the city, and authorizing the commissioners of accounts to make examination any time they see fit.

**2. CONSTITUTIONAL LAW—JUDICIAL POWERS—DELEGATION.**

Greater New York Charter, Laws 1897, p. 35, c. 378, § 119, authorizing the appointment of commissioners of accounts, charged with the duty of examining the accounts and methods of the department and offices of the city and to report to the mayor the result thereof, is not invalid as an attempt to confer judicial powers on the commissioners, since the examination made by them, as well as the report, settles nothing, except that it furnishes the mayor with information as to the condition and workings of the office investigated.

**3. MUNICIPAL CORPORATIONS—OFFICERS—INVESTIGATION OF ACCOUNTS—STATUTES.**

The examinations of accounts of the departments and offices of the city of New York provided for by Greater New York Charter, Laws 1901, pp. 31, 632, c. 466, §§ 54, 1534, authorizing investigations by a justice of the Supreme Court or by the board of aldermen, and by Greater New York Charter, Laws 1897, p. 35, c. 378, § 119, authorizing the appointment of commissioners of accounts, who shall make such examination of the accounts of the departments and offices of the city as the mayor may direct, etc., are separate and distinct, and neither of the examinations provided for is exclusive.

**4. SAME.**

The right of the commissioners of accounts authorized by Greater New York Charter, Laws 1897, p. 35, c. 378, § 119, to make examinations of the accounts and methods of the departments and offices of the city, to determine the extent of the examination, rests with the commissioners, and they may pursue their investigation so long as the examination conducted by them or the questions propounded to witnesses called by them is relevant and pertinent to the subject-matter of the inquiry.

Lambert, J., dissenting.

Appeal from Trial Term.

In the matter of the application of John C. Hertle and another, commissioners of accounts of the city of New York, for a warrant for the arrest and commitment to jail of John F. Ahearn. From an order granting the application and issuing a warrant of commitment (105 N. Y. Supp. 1022), John F. Ahearn appeals. Affirmed.

Argued before McLAUGHLIN, INGRAHAM, CLARKE, HOUGHTON, and LAMBERT, JJ.

Martin W. Littleton, for appellant.

Terence Farley, for respondents.

McLAUGHLIN, J. The appellant is the president of the borough of Manhattan, in the city of New York. By reason of certain charges which were published concerning the management of his office he requested the mayor of the city of New York to direct the commissioners of accounts to make an investigation of his department. The mayor did as requested, and the examination was entered upon and continued for some time, when the appellant was called as a witness, and, after being duly sworn, certain questions were propounded to him, which by advice of counsel he declined to answer, substantially upon the ground that the commissioners had no power to inquire—he holding an elective office—into the policy of his administration; that they had already made a detailed examination, and for that purpose he had afforded them the fullest and freest access to all the books, papers, and records in the office; that the facts before them showed, as well as reports made, that the office was in good condition; and that any further examination was unnecessary. The commissioners of accounts thereupon applied to the Special Term of this court, by an order to show cause, for a warrant committing him to jail for refusing to answer the questions put to him, and directing that he there remain until he submitted to answer such questions, unless in the meantime he were discharged according to law. The motion was granted, and a warrant of commitment issued, from which he appeals.

The examination of appellant was sought under section 119 of the Greater New York Charter, which he contends, through his counsel, if construed to confer general powers on the commissioners of accounts to conduct any examination which they deemed for the best interest of the city, is unconstitutional, in that it is an attempt to confer judicial powers upon them. This section of the charter, or so much of it as is pertinent to the question under review, reads as follows:

"The mayor shall appoint and remove at pleasure two persons who shall be commissioners of accounts, one of whom shall be a certified public accountant. It shall be their duty once in three months to make an examination of the receipts and disbursements in the offices of the comptroller and chamberlain, in connection with those of all the departments and officers making returns thereto and report to the mayor a detailed and classified statement of the financial condition of the city as shown by such examination. They shall also make such special examinations of the accounts and methods of the departments and offices of the city * * * as the mayor may from time to time direct, and such other examinations as the said commissioners may deem for the best interests of the city, and report to the mayor or and the board of aldermen the results thereof. For the purpose of ascertaining facts in connection with these examinations, they shall have full power to compel the attendance of witnesses, to administer oaths and to examine such persons as they may deem necessary."

When the office was first created (Laws 1873, p. 513, c. 335, § 106) the duties of the commissioners, of whom the president of the department of taxes and assessments was one, were to examine into the

financial condition of the city and make and publish a detailed state-
ment thereof.  They were also to make from time to time—

"an examination of the expenses of the several departments and officers, and
make such recommendations to the board of apportionment, and other officers,
with reference thereto, and particularly with reference to salaries and duties,
as they may deem advisable."

This statute, as re-enacted by the consolidation act (Laws of 1882, p.
29, c. 410, § 110), was amended so as to read substantially as above
quoted by chapter 516, p. 608, of the Laws of 1884, which was re-
enacted in the Greater New York Charter (Laws of 1897, p. 35, c.
378, § 119).

It will be observed by the amendment of 1884 the two persons ap-
pointed by the mayor were the sole commissioners of accounts, the
president of the department of taxes and assessments no longer being
included, and the statement made by the commissioners of the financial
condition of the city were reported to the mayor, instead of being pub-
lished as before.  It will also be observed that the power of the com-
missioners was considerably increased.  Besides the regular statements
of the financial condition of the city, they were authorized to make
special examinations at the mayor's direction, or of their own volition,
as they might "deem for the best interests of the city," of the accounts
and methods of the various departments, and report the result to the
mayor and board of aldermen.  For the purpose of making these ex-
aminations, they were given power to examine witnesses, which was
much more extensive than was necessary if the examination was design-
ed simply for the purpose of ascertaining whether the accounts were
properly kept.  If this were the purpose, it is difficult to imagine why
so great a change was made by the amendment, and especially why the
commissioners should have been clothed with power "to compel the
attendance of witnesses" and examine them under oath.  Obviously
this was not the purpose of the amendment.  It was designed to clothe
the commissioners with power to ascertain, not only what the books of
the office showed, but what they ought to show, by requiring witnesses
to submit to an examination, to the end that the actual transactions of
the office in all their details, as well as every act of the officer himself
and his subordinates and employés in connection therewith, might be laid
before the mayor.  The fact that the office investigated is an elective
one makes no difference, because the statute applies just as much to
an officer who is elected as it does to one who is appointed.  The charter
makes it the duty of the mayor to keep himself informed of the doings
of the various departments of the city (section 115, subd. 3), and that he
may properly discharge the duty thus imposed upon him he is author-
ized to direct the commissioners of accounts to make an examination
any time he sees fit.  The examination thus directed cannot be prevent-
ed by an assertion of the officer whose department is being investigated
that he holds the position by election, rather than by appointment, or
that the examination is unnecessary.

The act, in my opinion, is not unconstitutional, and this was the view
of the late General Term.  Matter of McAdam, 7 N. Y. Supp. 454,
54 Hun, 637.  Nor does it confer judicial powers upon the commis-

sioners. The examination made by them, as well as their report, settles nothing, except that it furnishes the mayor with accurate information as to the state, condition, and workings of the office investigated. It is in no sense a judicial proceeding. They have no power to decide. Matter of Armstrong v. Murphy, 65 App. Div. 126, 72 N. Y. Supp. 475. In a great city like New York, working under a charter as complex as its charter is, public policy requires that every available means of examining the administration of the various departments and offices of the city government be utilized to their fullest extent, and statutes having this object in view should be liberally construed. The fact that the Legislature has seen fit to provide that an investigation may be made by a justice of the Supreme Court (Greater New York Charter, Laws 1901, p. 632, c. 466, § 1534) or by the board of aldermen (Id. p. 31, § 54) is not of the slightest importance, because the Legislature had the power to provide, as it did in section 119 of the charter, that an examination might be made by the commissioners of account at any time at the request of the mayor. Neither of the examinations thus provided for is exclusive, but each may be had separate and distinct from the other.

Nor does it lie with the appellant to say that, by reason of the examination already made, a further examination is unnecessary. The determination of that question rests solely with the commissioners. They may pursue their investigation so long as the examination conducted by them or the questions propounded to witnesses shall be relevant and pertinent to the subject-matter of their inquiry. The questions propounded to the appellant were relevant and pertinent, and were a proper subject of investigation.

If the foregoing views be correct, then it follows that the order and warrant of commitment should be affirmed, with $10 costs and disbursements.

INGRAHAM, CLARKE, and HOUGHTON, JJ., concur.

LAMBERT, J. (dissenting). I am unable to concur in the decision about to be handed down by this court. The appellant, the president of the borough of Manhattan, has been asked certain questions relating to the principles involved in and applied in the executive conduct of his office by the commissioners of accounts of the city of New York. He has refused to answer those questions under the advice of counsel, and the broad question presented, upon this appeal from an order and warrant of commitment for contempt, is whether the commissioners of accounts have the inquisitorial powers which they have attempted to exercise in this case. If it is within the contemplation of the law that these commissioners should go into an inquiry as to the policy of the administrations of the various borough executives, then there can be no question of the power of the court to punish as for a contempt, where the witness refuses to answer questions which do not involve his own constitutional rights. The powers which these commissioners claim must be found, if at all, in the provisions of section 119 of the Greater New York charter, which, under well-recognized rules, must be read and interpreted in connection with the provisions

of the entire act, in order that it may be made to harmonize with the letter and spirit of the act. If we find that the commission was created for limited purposes, that the charter and the general policy of the law has amply provided for such general investigations as are here undertaken, and that the president of the borough of Manhattan has no duties coming within the limited purview of the commission, then we may fairly conclude that the Legislature did not intend to vest this inquisitorial power in the commissioners of accounts, and that they have exceeded their powers in attempting to make an inquiry into matters which do not concern them in their official capacity. Words absolute of themselves, and language the most broad and comprehensive, may be qualified and restricted by reference to other parts of the same statute in which they are used, and to the circumstances and facts existing at the time, and to which they relate or are applied. A literal interpretation of words in most common use, and having a well-defined meaning as ordinarily used, would not unfrequently defeat, rather than accomplish, the intent of the party using them. If, in reading a statute in connection with other statutes passed at or about the same time, a doubt exists as to the force and effect the Legislature intended to give to particular terms—that is, as to the meaning it was intended they should bear and have in the connection in which they are used—it is competent to refer to the circumstances under which and the purposes for which a statute is passed, to ascertain the intent of the Legislature. The ground and cause of the making of a statute explains the intent. Smith v. People, 47 N. Y. 330, 337, and authority there cited; Riggs v. Palmer, 115 N. Y. 506, 22 N. E. 188, 5 L. R. A. 340, 12 Am. St. Rep. 819.

The commissioners of accounts were first created under the provisions of section 106, c. 335, p. 513, of the Laws of 1873, at a time when the financial affairs of the city of New York were under immediate consideration, and it was therein provided that the mayor should from time to time "appoint and remove at pleasure two persons, who, together with the president of the department of taxes and assessments, shall be commissioners of accounts." It was made their duty, once in three months, and oftener if they deemed it proper, to examine all vouchers and accounts in the offices of the comptroller and chamberlain, and to make and publish, in the City Record, a detailed statement of the financial condition of the city, showing the amount of its floating and funded debt, the amount received and expended since the last preceding report, with a classification of the sources of revenue and expenditure, and such other information as they shall deem proper. It was also provided that they should from time to time make an examination of the expenses of the several departments and make such recommendations to the board of apportionment and other officers with reference thereto, and particularly with reference to salaries and duties, as they shall deem advisable. It is plain from a reading of the provisions of this act that the purpose of the legislation was to afford to the public, and to the officers of the city, an official and accurate statement of the financial affairs of the city; that it was the purpose of the act to spread before the public the details of the financial transactions of the city, this act being in harmony with the general

legislation for the protection of taxpayers originating in 1872. See chapter 161, p. 467, Laws 1872; Ayers v. Lawrence, 59 N. Y. 192, 195, et seq. It grew out of the history of municipal corruption which was brought to the forefront in the early '70's, and its entire purpose was to afford a means of bringing to bear the corrective influence of publicity in the affairs of municipalities. See Ayers v. Lawrence, supra. The provisions of the Laws of 1873 were retained in the consolidation act, and in 1884 chapter 516, p. 608, of the Laws of 1884, amended the provisions by adding that:

"They shall also make such special examinations of the accounts and methods of the departments and officers of the city and county government as the mayor may from time to time direct, and report to the mayor the result thereof; and such other examinations as the said commissioners may deem for the best interests of the city and county. For the purpose of ascertaining facts in connection with these examinations, they shall have full power to compel the attendance of witnesses, to administer oaths, and examine such persons as they may deem necessary."

This was the state of legislation upon this question at the time of the adoption of the Greater New York charter. At that time there were no boroughs, no borough presidents, the system of government was comparatively simple, the executive power being lodged in a single mayor, and the power to make "such special examinations of the accounts and methods of the departments and offices of the city and county government as the mayor may from time to time direct" related to the departments and offices as they then existed, and to such as had "accounts and methods," not "accounts or methods." They had no powers of investigation independent of accounts. Where there were accounts they were authorized to look into the "accounts and methods"; but these methods were such as related properly to the accounts and the manner and form of their records, and not to the motives or purposes which executive officers might have in view in the discharge of duties delegated to them by law. Keeping this situation in view, we should look at the provisions of section 119 of the Greater New York charter for its proper interpretation, under which this inquisitorial power is attempted to be exercised against the appellant, the president of one of the principal boroughs of the city. The section is as follows:

"The mayor shall appoint and remove at pleasure two persons who shall be commissioners of accounts, one of whom shall be a certified public accountant. It shall be their duty, once in three months, to make an examination of the receipts and disbursements in the offices of the comptroller and chamberlain, in connection with those of all the departments and officers making returns thereto, and report to the mayor a detailed and classified statement of the financial condition of the city as shown by such examinations. They shall also make such special examinations of the accounts and methods of the departments and offices of the city and of the counties of New York, Richmond, Queens and Kings, as the mayor may from time to time direct, and such other examinations as the said commissioners may deem for the best interests of the city, and report to the mayor and the board of aldermen the results thereof. For the purpose of ascertaining facts in connection with these examinations they shall have full power to compel the attendance of witnesses, to administer oaths and examine such persons as they may deem necessary."

Obviously there is no enlargement of the spirit of this provision over the law as it existed before the enactment of the new charter. The changes in phraseology are merely to conform it to the enlarged territory, and it is to be understood exactly as it would have been understood if we were construing the charter as it existed prior to the creation of the greater city in 1897. 'It was the departments and offices of the city, the administrative departments and those which had to do with accounts, that were to be within the jurisdiction of these commissioners, and the special nature of the commission, as one of limited scope, is to be gathered from the fact that one of the two is required to be a "certified public accountant." Under the Greater New York charter there were several boroughs, and it was provided that each of these boroughs should have a president, and this president was invested with certain executive functions; but in no instance is he required to report to the comptroller or chamberlain, nor is any one given any supervisory powers over him in the discharge of his particular duties; the only suggestion of anything of the kind being found in the provision of section 383 that he "shall make an annual report of the business and transactions of his borough to the mayor." There is no power of removal vested in the mayor. The borough presidents may be removed only in a like manner with the mayor, and it is clear that in the provisions relating to the boroughs, as such, there is no room for the interference of the commissioners of accounts, who are confined in their duties to the examination of "the accounts and methods of the departments and offices of the city and of the counties," etc., and the administrative departments, which are here referred to, are specially enumerated in section 96 of the charter. These do not include the office of borough president. Indeed, the whole theory of the charter is that the boroughs are in a sense independent municipalities. It is true, of course, that the powers are limited, but they are, in so far as they relate to borough matters, independent of the executive control of the mayor; and, as there is no provision in the charter by which the mayor can either remove or control the conduct of a borough president, it is hardly a fair construction of the provisions of section 119 of the charter to say that it contemplates, as was attempted by the commissioners, the investigation of the methods employed by the president of the borough of Manhattan in dealing with the matters specially confided to his care by the letter and the spirit of the charter.

Chapter 9 of the charter is subheaded "Borough Officers," and deals with the election and qualifications, terms, etc., of such officers, treating them as entirely distinct from the city officers, and by the provisions of section 383 the president is vested with certain distinct duties, none of which require any reports to the financial officers of the city; and as all of the questions which the commissioners of accounts sought to have answered related to matters which did not relate to "accounts and methods" in any of the departments or offices of the city, but to matters of administration which have, by the terms of the charter, been delegated to the boroughs and the officers of the boroughs, and which have nothing to do with any "accounts and methods," I am unable to understand how it can be held that the ap-

pellant is in contempt in refusing to answer these questions. The questions, as asked by these commissioners, going into the reasons which prompted the acts of the borough president in the discharge of his duties, are not in my judgment within their delegated powers, and hence he was under no obligations to answer them. The commissioners were encroaching upon his rights.

This view of the provisions of section 119 becomes the more obvious when we remember that the charter has, by the provisions of section 1534, made an elaborate plan for conducting a summary examination into the affairs of the city under the supervision of the Supreme Court, upon the motion of various officers or citizen taxpayers, in which any "member of the board of aldermen, commissioner, head of department, chief of bureau, deputy thereof or clerk therein, or other officer of the corporation or person," may be examined. And again by the provisions of section 54 the board of aldermen are given large powers of investigation, so that there is no occasion for extending the powers of the commissioners of accounts beyond express delegated functions of investigating accounts and methods in relation to such accounts.

In this connection the language of Washington in his farewell address is pertinent, and is true in an equal degree of municipal governments as well as in the affairs of nations. "It is important, likewise," says this great man, "that the habits of thinking, in a free country, should inspire caution in those intrusted with its administration, to confine themselves within their respective constitutional spheres, avoiding, in the exercise of the powers of one department, to encroach upon another. The spirit of encroachment tends to consolidate the powers of all the departments in one, and thus to create, whatever the form of government, a real despotism." Here there is clearly no reason for encouraging "that love of power and proneness to abuse it which predominates in the human heart," and the appellant, instead of being punished for a contempt, should be commended for his courageous refusal to submit to usurpation on the part of these commissioners, whose duties are limited to the consideration of accounts and methods connected with such accounts, and cannot be extended rightfully to matters which the people have intrusted to their elective officers, and for which they hold the remedy in their own hands, if there is an abuse of the powers.

The order appealed from should be reversed.