In the Matter of the Application of DAVID HIRSHFIELD, as Commissioner of Accounts of The City of New York, Respondent, for a Warrant of Attachment against CHARLES L. CRAIG, a Witness, Appellant.

In the Matter of the Application of DAVID HIRSHFIELD, as Commissioner of Accounts of The City of New York, Respondent, for a Warrant of Attachment against AUGUSTUS J. RINN, a Witness and Another, Appellants.

In the Matter of the Application of DAVID HIRSHFIELD, as Commissioner of Accounts of The City of New York, Appellant, for a Warrant of Attachment against CHARLES L. CRAIG, a Witness, Respondent.

First Department, June 6, 1924.

**Municipal corporations — city of New York — examination of accounts by commissioner of accounts — power to subpœna comptroller granted by Greater New York charter, § 119 — said section does not give power to issue subpœna duces tecum — error to continue proceedings to take proof of allegations in affidavits on motion to vacate attachment against person — order directing issuance of attachment modified by striking out provision requiring production of contract, etc.— commissioner of accounts has power on request of board of estimate and apportionment to investigate in respect to status of funds of employees' retirement system and to subpœna comptroller and subordinate — alleged ignorance of subordinate as to matter under investigation not ground for ignoring subpœna — Greater New York charter, § 119, authorizes investigation of offices of comptroller and chamberlain.**

Section 119 of the Greater New York charter relating to the duties of the commissioner of accounts gives the commissioner power to subpœna the comptroller on an investigation of certain charges relative to granite used in the construction of the court house and with respect to the contract let for the supply thereof but said section does not give the commissioner of accounts power to issue a *subpœna duces tecum* to compel the production of books, papers and documents.

It was error for the court to make an order directing that proof be taken of the allegations of affidavits on the motion to vacate an attachment against the person issued on the failure of the comptroller to attend in answer to a subpœna, for an inquiry cannot be conducted in advance as to the motives and good faith of the examining officer in proceedings before him or about to be begun, but the witness should attend in answer to the subpœna and if his rights are violated on the hearing, the courts will protect him.

The order directing the issuance of the attachment against the person of the comptroller should be modified by striking out the provision requiring the production of the contract relating to the furnishing of granite and specimens of the granite, since the commissioner of accounts has no power to issue a *subpœna duces tecum.*

The commissioner of accounts has power under section 119 of the Greater New York charter to conduct an investigation on request by the board of estimate and apportionment as to the status of the funds of the employees' retirement

system, of which the comptroller is the custodian, and in that investigation he has power to subpœna the comptroller and a subordinate in his office but has no authority to direct the production of books and papers generally.

The alleged ignorance of the subordinate of the comptroller, who was subpœnaed by the commissioner of accounts, as to the matter under investigation, does not excuse him from attending before the commissioner in answer to the subpœna.

That part of section 119 of the Greater New York charter which authorizes the commissioner of accounts to make such special examinations of the accounts and methods of the departments and offices of the city as the mayor may from time to time direct, and such other examinations as the said commissioner may deem for the best interests of the city, applies to the offices of the comptroller and chamberlain.

APPEAL by Charles L. Craig, in the first above-entitled proceeding, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 19th day of March, 1924, denying his motion to vacate an order entered in said clerk's office on the 5th day of September, 1923, and any and all writs of attachment issued against his person by virtue of said order, and any and all subpœnas purported to have been issued and signed by the petitioner.

Appeal by Augustus J. Rinn and another, in the second above-entitled proceeding, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 19th day of March, 1924, denying their motion to vacate orders entered in said clerk's office on the 27th day of July, 1923, and on the 6th day of August, 1923, and any and all writs of attachment issued against the person by virtue of said orders, and any and all subpœnas purported to have been issued and signed by the petitioner.

Appeal by David Hirshfield, as commissioner, etc., in the third above-entitled proceeding, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on or about the 8th day of April, 1924, in so far as it continues said proceeding for the purpose of taking evidence as to the truth of statements contained in affidavits used therein.

*Charles L. Craig,* appellant, respondent, in person, and for the appellant Augustus J. Rinn.

*George P. Nicholson, Corporation Counsel* [*John F. O'Brien* of counsel; *John Lehman* and *Russell Lord Tarbox* with him on the brief], for the respondent, appellant, David Hirshfield, as commissioner, etc.

McAVOY, J.:

These are appeals from three orders. Two of the orders deny motions to vacate attachments of the person of the appellant

Craig and of one Rinn, an official in the office of the comptroller, for their failure to attend hearings before the commissioner of accounts pursuant to subpœnas issued in matters pending before him, and for the refusal of the said Craig to produce papers and documents under subpœnas *duces tecum.* The third order is a direction to continue the proceedings therein mentioned for the purpose of taking proof of the truth of statements contained in affidavits on a motion to vacate the attachments and the subpœnas issued to compel the attendance of the respondent and the subpœna *duces tecum* directing the production of papers. The commissioner of accounts claims the right to examine the comptroller on all three of the said matters as to which he was directed to investigate by the mayor under section 119 of the Greater New York charter, as amended by chapter 517 of the Laws of 1916. The comptroller asserts that the commissioner of accounts has no such authority; that the comptroller may be examined only as to certain matters specifically set forth in that section, and as to the general power of inquiry granted therein, the commissioner may only examine departments and offices of the city government, exclusive of the finance department, which the comptroller claims is by history of its statutory creation and development exempt from control of the mayor or his subordinates.

Section 119 of the charter provides: " * * * It shall be the duty of the commissioner of accounts, once in three months, to make an examination of the receipts and disbursements in the offices of the comptroller and chamberlain, in connection with those of all the departments and officers making returns thereto, and report to the mayor a detailed and classified statement of the financial condition of the city as shown by such examinations. He shall also make such special examinations of the accounts and methods of the departments and offices of the city and of the counties of New York, Richmond, Queens, Kings and Bronx, as the mayor may from time to time direct, and such other examinations as the said commissioner may deem for the best interests of the city, and report to the mayor and the board of aldermen the results thereof. For the purpose of ascertaining facts in connection with these examinations he shall have full power to compel the attendance of witnesses, to administer oaths and to examine such persons as he may deem necessary."

It will be observed that this section confers no authority upon the commissioner to subpœna books, papers or documents; and while some expressions of the courts appear to take for granted that such power exists, we cannot assent to that view. Under the authority thought to be conferred by this section of the charter, the mayor directed the commissioner of accounts to investigate

and report in respect to certain charges relative to granite used in the construction of the new county court house, and with respect to the contract let for the supply of the granite.

It was the commissioner's official duty to obey that direction. The statute says that he shall make such special examinations as the mayor may direct. It also says that for the purpose of ascertaining facts in connection with examinations, he shall have full power to compel the attendance of witnesses and to examine " such persons as he may deem necessary." Even without the mayor's directions he would have had the right to make the examination, for the statute says that he shall make such examinations as he may deem for the best interests of the city. We think his power to compel the comptroller to attend and be examined is granted by this section of the charter; and that the contention of that officer that the commissioner is limited by the powers conferred in the first sentence quoted *supra* cannot be sustained. The powers allotted by section 119 of the charter to the commissioner of accounts have been frequently challenged in their exercise, but the appellate judicatories have given a most liberal and inclusive construction to this section and upheld the legislative right to confer by enactment these inquisitorial powers. (*Matter of Hirshfield* v. *Cook*, 227 N. Y. 297; *Matter of Hirshfield* v. *Hanley*, 228 id. 346; *Matter of Hertle* [*Ahearn*], 120 App. Div. 717; affd., 190 N. Y. 531; *Matter of Wallstein*, 178 App. Div. 140.)

" Such persons as he may deem necessary " includes an elective officer. It has been held that an elective officer, the same as an appointive officer, is subject to the provisions of section 119. (*Matter of Hertle* [*Ahearn*], 120 App. Div. 717; affd., 190 N. Y. 531.)

This court has pointed out heretofore in a decision involving this right of examination that " In a great city like New York, working under a charter as complex as its charter is, public policy requires that every available means of examining the administration of the various departments and offices of the city government be utilized to their fullest extent and statutes having this object in view should be liberally construed." (*Matter of Hertle* [*Ahearn*], 120 App. Div. 717, 721.)

The commissioner not only had jurisdiction, but, under the circumstances, was under an official obligation to compel the attendance of the comptroller before him for the purpose of examination under oath concerning matters relevant and material. The comptroller's sworn admission or denial concerning changes in the specifications was relevant and material. It is not for the witness to contest the relevancy and materiality of matters prior to the examination. (*Matter of Hertle* [*Ahearn*], 120 App. Div. 717, 721.)

" It is always to be presumed, that a public officer has acted with ordinary caution and in good faith.   And where an officer is justified by law in doing an act, his motives cannot be inquired into, for the purpose of affecting the validity of his act, or of founding an action against him on the allegation of malice in its performance." (Throop Pub. Off. § 567.)

The rule is stated by Judge McLAUGHLIN in a concurring opinion in *Beardsley* v. *Kilmer* (236 N. Y. 80, 91), as follows: " Any act which the law says one has a legal right to do does not become wrongful or actionable, no matter what the motive may be.   The motive which actuates is immaterial. (*Auburn & Cato Plank Road Co.* v. *Douglass*, 9 N. Y. 444; *Morris* v. *Tuthill*, 72 N. Y. 575; *Kiff* v. *Youmans*, 86 N. Y. 329; *Allen* v. *Flood*, [1898] A. C. 1; Pollock on Torts [11th ed.], 23.) "

The ruling in *Hirshfield* v. *Hanley* (228 N. Y. 346), upon which the appellant, respondent, lays great stress, that " Those who are made witnesses in virtue of those powers [referring to the statute] are entitled to all the privileges and protection extended by the law to witnesses in judicial proceedings and the courts should and will be quick and firm in halting the exercise of those powers for irrelevant, illegitimate or oppressive examinations or purposes," does not give power to the court to suspend an examination before it has been begun.   The direct question involved in the *Hanley* case was whether the commissioner of accounts was authorized under section 119 of the charter to exercise his powers in respect to any except officers and employees of the city.   The Court of Appeals decided that his powers were not so restricted.   But its declaration was only intended to mean that no one could be compelled to testify against himself, that private books and papers would be properly protected, that the questions asked must be relevant and material, that no oppression could be practiced on the examination.

The order directing that proof be taken of the allegations of affidavits on the motion to vacate the attachment, made at Special Term, holds that witnesses subpœnaed to appear before the commissioner of accounts are entitled not only to all such privileges, but, in addition, to such privileges as an inquiry into the malevolence, motives and good faith of the examining officer in proceedings before him or about to be begun.   The words in the *Hanley* case were not intended to imply that a witness in a proceeding can ignore a subpœna to appear before a duly authorized officer and compel that officer, in advance of the examination, to prove that he will not allow " irrelevant, illegitimate or oppressive examinations," or execute any improper purpose, or that he will not act maliciously in the conduct of the examination.   A witness must obey the sub-

pœna, appear and answer questions which are relevant, legitimate and not oppressive. If, after being sworn as a witness, an attempt be made to infringe his rights, then the courts should and will be " quick and firm " to protect him.

We think that this order directing a continuance for the purpose of taking proof of matters contained in the affidavits on the motion to vacate the attachment should be reversed, and the motion to vacate the attachment directing the production of the witness denied. The order directing the issuance of the attachment should be modified by striking out the provision for production of the contract and specimens of granite, since we hold, as stated heretofore, that the power of issuance of a subpœna *duces tecum* is nowhere conferred on the commissioner of accounts, and no implication of such authority may be made as to a purely statutory officer who has but the powers expressly conferred by the legislative creator.

The appeals from the other two orders denying the appellant's motions to vacate writs of attachment issued against him and one of his subordinates for failing to attend hearings on matters pursuant to subpœna issued by the commissioner of accounts, relate to the examination of the comptroller in respect of the status of the funds of employees' retirement system, in which matter a subpœna was directed to the comptroller; and to an exchange of real estate between the city of New York and the New York and Harlem Railroad Company, in which a subpœna was issued to his subordinate.

As to the matter of the employees' retirement system: By section 1701 of the Greater New York charter, as added by chapter 427 of the Laws of 1920, there was established the " New York City Employees' Retirement System." By section 1704, as added by chapter 427 of the Laws of 1920, the board of estimate and apportionment is made the head of the system, and by section 1706, subdivision 1, as added by chapter 427 of the Laws of 1920, the members of that board are made trustees of the various funds created by that statute. By section 1706, subdivision 3, as added by chapter 427 of the Laws of 1920, the comptroller is the custodian of those funds which " shall be in his custody for the purposes of this chapter subject to the direction, control and approval of the board of estimate and apportionment as to disposition, investment, management and report."

To comply with a provision in section 1708, as added by chapter 427 of the Laws of 1920, it is necessary for the board of estimate and apportionment to know the amount of the income, interest and dividends derived from the deposits and investments of its funds, in order to ascertain whether any surplus is available for the reduction of the appropriation requested or whether any deficit has

occurred in the funds requiring an appropriation. The board of estimate cannot comply to the full extent with the provisions of this section without a definite knowledge as to the funds actually received and held by the custodian.

It is claimed that the comptroller on request refused to give to the board of estimate and apportionment any information relating to the status of the funds. Accordingly, on April 11, 1923, the committee of the whole of the board of estimate and apportionment, on the mayor's motion, directed the commissioner of accounts to make a thorough investigation and to give the board the information that the comptroller had been requested to give. The commissioner of accounts proceeded with the investigation. On August 1, 1923, he wrote to the comptroller and, after stating to him the reason for the investigation, made this request: " Will you, therefore, kindly inform me when it will be convenient for you to have my assistants call at your office and make an examination of the Employees' Retirement System, as indicated above, without interfering with the orderly conduct of the business of your office, and oblige? "

This letter was completely ignored by the comptroller. Since the comptroller refused, the commissioner of accounts under section 119 of the charter, on August 7, 1923, issued his subpœna and subpœna *duces tecum* to Mr. Craig, directing him to appear on August ninth with his records as custodian. Mr. Craig paid no attention to this subpœna or the subpœna *duces tecum.*

On an affidavit· verified September 5, 1923, the Special Term ordered an attachment to issue against the comptroller and commanded the sheriff to produce him as a witness on October tenth. The comptroller on October third obtained an order to show cause why the attachment theretofore issued and the subpœnas issued by the commissioner of accounts should not be vacated. This motion was denied, and he was directed to attend before the commissioner of accounts. On motion for reargument and for a reference to make inquiry into the matters alleged in the affidavits, the motion to vacate the attachment issued on September 5, 1923, was again denied and the warrant of attachment amended by commanding the sheriff to produce the witness on April 2, 1924, for examination.

From that order the witness appeals to this court.

Section 119 of the charter, heretofore quoted, vests the commissioner of accounts with authority to make such an examination as is here proposed, and the reasoning set out above in this opinion is applicable to the situation here. As to such portion of this order and the attachment issued thereon as directs the production of books, papers, accounts and documents generally, we rule that there

36

is no authority to direct their production, and the order and attachment should be modified accordingly.

In respect of the matter of the exchange of the city property with the railroad company, the facts are: A proposed exchange of real estate between the city and the Harlem Railroad Company, already arranged but for which conveyances have not been delivered, has been pending before the sinking fund commission. The comptroller had submitted a report dated February 26, 1923, to the commission and some of the members wished further investigation and report thereon. The secretary of the sinking fund commission, pursuant to direction of that body, informed the commissioner of accounts on March 22, 1923, that the comptroller's report was referred to him for report. The commissioner of accounts deemed it important that a map known as " Map 1225 " be examined. It relates to certain parcels concerning which the city is entitled to receive conveyances from the railroad company heretofore overlooked and neglected, according to the comptroller's version of the transaction. The original of this map is filed at White Plains, but a copy is in the possession of the real estate division in the finance department. Mr. Rinn is the head of that division. The comptroller, it is claimed, refused access to the map; and thereupon the commissioner subpœnaed Mr. Rinn to be examined concerning this exchange of property, but did not subpœna the map; and upon his refusal to obey, he obtained a warrant of attachment on July twenty-seventh from the court at Special Term. There was no subpœna *duces tecum* issued in this matter for any purpose.

This appeal is from an order refusing to vacate that attachment.

While it is asserted by the comptroller that Mr. Rinn knows nothing of the matter involved in the inquiry, it is obvious that such an excuse in advance of examination never could be countenanced as a reason for refusal to attend an authorized hearing under proper direction of a mandate of a court or officer clothed with the power to order one's attendance. A witness may not be the judge of his own competency nor of the materiality of his proposed testimony. The thought of a contrary rule demonstrates its futility in practice. The matter is one over which the commissioner of accounts had authority to act, and the provisions of the charter in section 119 give authority to issue the subpœna. We do not agree with the contention that the " special " and " other " examinations of departments and offices of the city government authorized by the second sentence of said section quoted *supra* do not relate to the offices of the comptroller and chamberlain, and that the examinations that were to be made in those offices were provided for in the first sentence only quoted *supra*

of the enabling section of the charter. Such a construction would narrow too greatly the power granted by the charter section to make such examinations as the commissioner may deem of benefit to the city, or such examinations as the mayor may direct under the power thereby conferred. It seems unreasonable to assume that the comptroller was exempt from examination in any matter affecting a city project or contract to which the other elective officers of the city, who are alike independent officers, must submit. A legislative design to exclude the comptroller from examination must be more patently indicated to have effect.

The orders and the attachments issued thereunder should be modified in so far as they contain directions to produce papers, books or documents under subpœnas *duces tecum*, and as so modified affirmed.

CLARKE, P. J., DOWLING, SMITH and MARTIN, JJ., concur.

On the first appeal: Order modified as directed in opinion and as so modified affirmed.

On the second appeal: Order affirmed.

On the third appeal: Order so far as appealed from reversed and motion to vacate attachment denied; order for writ of attachment, and the writ of attachment modified as directed in opinion.