In the Matter of the Application of EDNA F. STEIGER, Respondent, for a Peremptory Order of Mandamus against WILLIAM T. COLLINS, as Acting Mayor of the City of New York, Defendant, Impleaded with CHARLES L. CRAIG, as Comptroller of the City of New York, Appellant.

First Department, May 15, 1925.

Municipal corporations — civil service — mandamus to compel comptroller of city of New York to audit and pay claim of petitioner — petitioner was hired by commissioner of accounts as expert investigator and examiner in connection with special study and survey of city hospitals — civil service commission excepted her from examination — commissioner of accounts did not have authority to employ petitioner — action of civil service commission was illegal — salary of petitioner was not fixed as required by Greater New York charter, § 56 — mandamus will not be granted.

A peremptory mandamus order, directing the comptroller of the city of New York to audit and pay the claim of the petitioner for services rendered as an expert investigator and examiner in connection with a special study and survey of the city hospitals, is reversed, since it appears that the petitioner was hired by the commissioner of accounts of the city of New York and was excepted from examination by the action of the municipal civil service commission; that there was no such position as that for which the petitioner was hired; that the board of estimate and apportionment has employees whose duty it is to do the same work as that for which the petitioner was engaged; that the doctors and nurses in charge of the various hospitals are required to make reports; that the petitioner had no experience whatsoever in the line of work for which she was engaged; and that there was no need for petitioner's appointment, but the office was apparently created for her special benefit.

The commissioner of accounts had no power to employ the petitioner under the circumstances stated, and had at his disposal no such office either within or without the civil service. The action of the civil service commission in excepting the petitioner from examination was illegal and that action conferred no right upon the petitioner and in no way validated her unlawful appointment.

Furthermore, the board of aldermen did not, as required by section 56 of the Greater New York charter, upon recommendation of the board of estimate and apportionment, fix the salary of the petitioner, and for that reason alone she is not entitled to a peremptory mandamus order.

BURR, J., dissents.

APPEAL by the defendant, Charles L. Craig, as comptroller of the city of New York, from a peremptory mandamus order, granted by the Supreme Court at the New York Special Term and entered in the office of the clerk of the county of New York on the 19th day of November, 1924, directing said defendant, as comptroller of the city of New York, to audit and pay the claim of the petitioner for services rendered the city of New York.

*Charles L. Craig* [*John J. Sullivan* with him on the brief], for the appellant.

*Frank I. Tierney* [*Wilber W. Chambers* of counsel], for the respondent.

DOWLING, J.:

The petitioner, a graduate nurse, was appointed by the commissioner of accounts of the city of New York an " expert investigator and examiner in connection with a special study and survey of the City Hospitals, for and under the direction of the Commissioner of Accounts of the City of New York," at a daily salary of ten dollars beginning on January 24, 1924. She was so appointed under and pursuant to a resolution of the municipal civil service commission of the city of New York, dated January 23, 1924, which provides as follows:

" Resolved, that pursuant to the provisions of Clause 8 of Rule XII, Edna F. Steiger, 200 West 107th St., Manhattan, be and she hereby is excepted from examination to be employed by the Commissioner of Accounts as expert investigator and examiner in connection with a special study and survey of the City Hospitals."

The petitioner's duties, according to her testimony given in an examination in the office of the comptroller, were: " Q. Just what was that appointment for? A. It was to make a special study and survey of City institutions as an investigator. Q. What was this special study and survey to be? A. It was to make a survey of all the City institutions, the nursing situation, the dietary department, etc. Q. Were you specially directed to any particular branch of City institutions? A. No. Q. What do you understand a general survey to be? A. To go through the institutions, to see if there are enough nurses or too many; to see whether the patients are properly cared for, to go into the dietary department, and see whether there is a wastage of food or whether there is enough food for the patients, and I have gone into the crowded conditions of some of these institutions to see whether some were overcrowded and others could accommodate more patients. Q. Did you make surveys of this character previous to this for anyone? A. No, sir. Q. Had you worked with anybody who made such surveys? A. No, sir. Q. Then you had no experience in just this kind of work? A. No."

Her services covered the following hospitals, on which she made reports: Fordham, Gouverneur, Harlem, Kings County, Cumberland, City, Randalls Island, Greenpoint, Bellevue, City Home, Neurological and Coney Island. The amount for which petitioner claimed payment in this proceeding was $590 for services

rendered between March 17 and June 6, 1924, at the fixed rate of $10 per day.

The answer of the comptroller to the petition contains the following allegations, which are not in any manner denied:

" 6. That there is insufficient information in the hands of your deponent in warranting him to accept the services rendered by the petitioner as expert services. That from an examination of this petitioner made in the office of the Comptroller under date of July 3, 1924 (a copy of which is attached hereto and marked ' Exhibit A '), it is very evident that said petitioner was an ordinary nurse who was not even on the eligible list of nurses, on file in the office of the Municipal [Civil] Service Commission.   *   *   *

" 9. That the Commissioner of Accounts had absolutely no authority to make such an appointment when the petitioner had positively no qualifications to act in accordance with the provisions of the clause above mentioned.   According to the petitioner's own statements as cited in the exhibits attached, she was unqualified and unexperienced for this special expert survey work.

" 10. That there are examiners in the Board of Estimate for the very purpose for which this petitioner was employed; that said examiners are employed to make just such surveys as said petitioner was assigned to do; that the doctors and nurses in charge of the various hospitals and institutions to which this petitioner was assigned make regular reports concerning the matters which the petitioner was sent to investigate; that these individuals were and are far better experienced and more qualified to render reports on the subject than an inexperienced person such as this petitioner admittedly is; that the most this petitioner could have done in any of the institutions which she visited was to give passing glances over the departments which she inspected."

The said answer further shows that in the departmental budget of the commissioner of accounts for 1924 there is an item for " expert and emergency service," but there is nothing in these papers to show that the services of an expert were required for this " survey of the city hospitals," or that any emergency called for such services, or that petitioner was qualified to render them if really needed.

The theory on which the appointment in question is sought to be sustained is that the commissioner is a sort of super-commissioner with general supervisory powers to be exercised without apparent or disclosed reason or necessity.  As is said by counsel for petitioner herein: " No narrow construction should be given here to the power of the commissioner of accounts when dealing with his authority to employ an assistant in carrying on his work.

No right of the commissioner of accounts to investigate charges of wrongdoing or the right to summon witnesses is involved. Rather, a liberal construction should be given to his powers to employ such assistants as he deems necessary in making his inquiries."

This would be all very well if some valid cause for petitioner's appointment were disclosed. But all we have here is the fact that she was appointed to a specially created office, evidently particularly made for her, and rendered services therein for which she desired to receive the stipulated compensation.

There is not a word of explanation of why the sudden need for such a survey arose, nor of what emergency called for petitioner's selection to make it. If the action taken herein is valid, there is no reason why the commissioner of accounts should not employ without any assigned reason " experts " to make " surveys " of the police department, or of the fire department, or even of the mayor's office. No such sweeping powers are given to the commissioner of accounts by the charter of Greater New York. In defining his powers, Judge LEHMAN, writing for the Court of Appeals in *Matter of Hirshfield* v. *Craig* (239 N. Y. 98), said (at p. 111): " The power of the Commissioner to make special examinations has been challenged in a number of proceedings which have heretofore been reviewed by this court, and in all these cases that power has been confirmed. In these proceedings the Commissioner of Accounts set forth in his application for attachment against recalcitrant witnesses that he was making an examination or investigation of the accounts or methods of particular departments or offices, and we were called upon to decide only whether the statute* gave the Commissioner of Accounts authority to make special examinations of the accounts of these particular departments or offices. In the proceedings now before us the ' examinations ' are differently described, and we are now called upon to determine whether the power of the Commissioner to make examinations extends not only to particular departments or offices, but is sufficient to cover the subject-matter of the examination here attempted. The Commissioner of Accounts, as the title of his office indicates, is an administrative officer whose functions concern primarily the books and accounts of the city. He is authorized to make special examinations of the accounts and methods of various departments and officers at the direction of the Mayor, ' and

---

* See *Greater New York* charter (Laws of 1901, chap. 466), § 119, as amd. by Laws of 1916, chap. 517. Since amd. and in part superseded by N. Y. Local Laws of 1924, No. 2, whereby since July 29, 1924, this officer is the head of the administrative department of the city of New York known as the department of investigation and accounts. See City Home Rule Law, § 10 *et seq.*— [REP.

First Department, May, 1925.          [Vol. 213

such other examinations as the said commissioner may deem for the best interests of the city.' The courts have given a liberal construction to the language describing the scope of such examinations.

" In *Matter of Hertle* [*Ahearn*] (120 App. Div. 717, 720; affd., 190 N. Y. 531) Judge McLaughlin, then a member of the Appellate Division of the first department, pointed out that the intent of the statute was to clothe the Commissioner ' with power to ascertain not only what the books of the office showed, but what they ought to show, by requiring witnesses to submit to an examination, to the end that the actual transactions of the office in all its details, as well as every act of the officer himself and his subordinates and employees in connection therewith might be laid before the Mayor.' Since that decision successive Commissioners of Account have exercised the broad powers conferred upon them under that construction of the statute, and we shall not place any new or narrower construction upon it. No court, however, has held that the Commissioner of Accounts has power to make a special examination of any matter which is not in any way a part of the *accounts and methods* of some department or office, and does not concern a transaction which properly should be shown in the books of that department or office. His power to make examinations at the direction of the Mayor is clearly limited to examinations of the accounts and methods of such departments and offices, and under any reasonable construction of the statute his power to make such ' other examinations as he may deem for the best interests of the city ' is subject to the same limitation. He is not a judicial officer nor part of the police system or the legal department of city, county or State, and he has not been given inquisitorial powers to investigate charges of wrongdoing nor to compel the disclosure of any matter upon which he thinks the officers of the city should be informed."

In the present proceeding there is nothing to show that the commissioner was conducting either a general or special examination of the department of public welfare, the commissioner of which is in charge of the city hospitals, or an examination into the accounts and methods of that department. He is not vested with any control over the hospitals, nor is he the one to dictate what the methods used therein shall be. If irregularities, frauds or diversions of funds exist, he can investigate them and report his findings to the mayor. But he has no original jurisdiction to shape or control the policies of any city department, or to substitute his judgment for that of the head thereof who is solely responsible for its administration.

The commissioner of accounts has not attempted by affidavit

to justify the appointment of petitioner, nor to disclose any " emergency " that required the services of an " expert " to make a " survey " of the kind claimed to have been attempted by petitioner. There is nothing to show what the results of her services were, nor does it appear that they were of any value whatever to the city.

If the commissioner of accounts had no power to employ an " expert " under the conditions disclosed by this record, and had at his disposal no such office, either within or without the classified service, to which he could make an appointment, of course, the action of the municipal civil service commission in excepting petitioner from examination as " expert investigator and examiner," in purported conformity to clause 8 · of rule XII of the Rules of the Municipal Civil Service Commission of the City of New York, conferred no further right upon petitioner and in no way validated her unlawful appointment.

Furthermore, and in any event, there has been no fixation of compensation for petitioner as required by the Greater New York charter. Section 56 thereof provides, so far as is material: " Except as in this section otherwise provided it shall be the duty of the board of aldermen, upon the recommendation of the board of estimate and apportionment, to fix the salary of every officer or person whose compensation is paid out of the city treasury other than day laborers, and teachers, examiners and members of the supervising staff of the department of education, irrespective of the amount fixed by this act, except that no change shall be made in the salary of an elected officer or head of a department during his tenure of office." (See Laws of 1901, chap. 466, § 56, as amd. by Laws of 1902, chap. 435. Since amd. and superseded by N. Y. Local Laws of 1925, No. 1; Id. No. 2. See Gen. City Law, § 25, added by Laws of 1921, chap. 502, as amd. by Laws of 1923, chap. 604; City Home Rule Law, § 10 *et seq.*)

There is no pretense that petitioner's salary has been fixed pursuant to this section of the Greater New York charter.

So far from showing a clear legal right to the order of mandamus applied for, it affirmatively appears that petitioner is not entitled by law to the relief which she seeks.

The order appealed from should, therefore, be reversed, with ten dollars costs and disbursements, and the motion denied, with fifty dollars costs.

CLARKE, P. J., McAVOY and MARTIN, JJ., concur; BURR, J., dissents.

Order reversed, with ten dollars costs and disbursements, and motion denied, with fifty dollars costs.